**ORYX ENERGY COMPANY, Appellant,**

v.

**PLAINS RESOURCES, INC.; Samedan Oil Corporation; Amerada Hess Corporation; ATC Realty Eight, Inc.; Boswell Production Company; D–I Energy, Inc.; Fifteen Below, Ltd.; Grover Beakley; Harken Oil & Gas, Inc.; Harry Lee Berg; Masters–Gray Investments, Inc.; Nicor Exploration Co.; Rebel 1982 Drilling Program Ltd.; Sanguine, Ltd.; Top of Texas Energy, Inc.; United Trans–Western, Inc.; Unit Petroleum Company; Unit Drilling and Exploration Company; Unit 1982–A Key Employees Exploration Fund; Diverse Energy Investments, Inc.; U.S. Energy Resources, Inc.; and WAFUM–IV, Inc., Appellees.**

No. 82114.

Court of Appeals of Oklahoma,
Division No. 2.

Dec. 27, 1994.

Rehearings Denied Feb. 13, 1996.

Certiorari Denied May 8, 1996.

Robin F. Fields, Connie M. Bryan, McKinney, Stringer & Webster, P.C., Oklahoma City, for Appellant.

William B. Rogers, William B. Rogers & Associates, Oklahoma City, for Appellees Samedan, Berg, Wafum–IV, Top of Texas, Harken, and United Trans–Western.

Michael T. Keester, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, for Appellee Masters–Gray.

Randall J. Wood, Hammons & Hunter, Oklahoma City, for Appellee Nicor.

Frank D. Spiegelberg, Boesche, McDermott & Eskridge, Tulsa, for Appellees Unit

Petroleum, Unit Drilling, Unit 1982–A, and Diverse Energy.

REIF, Judge.

This appeal arises from a proceeding to cash balance the underproduced interest owners upon depletion of the Flansburg 1–1 gas well in Caddo County. Appellant Oryx Energy Company, one of the overproduced owners, does not contest its obligation to cash balance or the amount of cash balancing it owes. Oryx objects to the trial court's award of interest and attorney fees to the underproduced owners. Neither the parties' gas balancing agreement nor their joint operating agreement provided for interest and attorney fees in connection with cash balancing upon depletion. Despite this contractual omission, the trial court held that interest and attorney fees were recoverable under 52 O.S.1991 § 540.[1]

■ Oryx challenges this conclusion on grounds that (1) parties may contract independently of section 540 and exclude interest and attorney fees, (2) applying section 540 unconstitutionally impairs their contractual choice to omit interest and attorney fees, (3) cash balancing upon depletion is not the type of payment of "proceeds from production" governed by section 540. Oryx cites *Seal v. Corporation Commission,* 725 P.2d 278 (Okla.1986), in support of its position. The *Seal* case does lend some support for the Oryx position. However, the general principles applied by the court in *Seal* in upholding the constitutionality of 52 O.S.Supp.1983 §§ 541 through 547,[2] and in construing section 540 vis-a-vis these statutes, dictate that cash balancing payments upon depletion are subject to section 540.

The court observed in *Seal,* "[t]he State of Oklahoma . . . has extensively and continuously regulated the natural gas industry," particularly in areas of "production and purchasing." *Id.* at 292. Given such substantial regulation, parties with contracts on these subjects "could not have reasonably expected that their contractual rights were immune from alteration by subsequent State regula-

tion." *Id.* This is particularly true with respect to legislation that "imposes a general rule of conduct for the natural gas industry" to protect a broad societal interest such as correlative rights. *Id.* Additionally, the *Seal* case recognized that section 540 applied "to the balancing of proceeds accrued from past sales" and that the statutory assessment of interest was a "penalty" on any failure to pay proceeds of production as set forth in section 540. *Id.* at 296.

■ Accordingly, we hold that section 540 is a general rule of conduct for the oil and gas industry that is designed to protect correlative rights through affirmative requirements for distribution of proceeds from sales of production, including cash balancing upon depletion, and through penalties for violations. As such, there is no constitutional impediment to applying its interest and attorney fee provisions to cash balancing of proceeds from accrued past sales upon depletion, even though the parties' balancing contract did not expressly provide interest and attorney fees in connection with the enforcement of balancing rights.

■ However, holding that the gas balancing agreement is governed by section 540 does not end the inquiry concerning the propriety of the trial court's assessment of interest and attorney fees in this case. Interest, attorney fees and costs are "penalties" that are properly imposed only when a party liable to make payments "violates this section." Oryx correctly asserts that it could not fulfill its obligation to pay without final production information from the operator that would allow Oryx and the other parties to determine who was overproduced, who was underproduced, and the amount owing by the overproduced parties to the underproduced parties. It is undisputed that the operator did not provide final production information from depletion of the well in November of 1987 until September of 1991. Without this information, Oryx could not know what it owed or to whom and, accordingly, could not have violated its obligation to

---

1. Renumbered as § 570.10 of this title.

2. Renumbered as § 581.2, § 581.6, § 581.5, § 581.7, § 581.8, § 581.9, and § 581.10 of this title.

pay. In view of pending litigation, the offer to allow judgment to be taken filed by Oryx on November 19, 1991, was a sufficient, timely means to effect payment of the proceeds of overproduction that the final production figures indicated Oryx owed to the underproduced parties, and at the same time limit its liability to amounts owing for cash balancing.

Stated another way, Oryx acted to discharge its statutory duty within sixty days after a reliable final determination of its obligation was presented by the party with the contractual duty to account upon depletion. Oryx was under no contractual duty to independently determine its liability, and section 540 cannot be read to imply such a duty where all parties concerned have agreed that the operator is responsible to keep and provide information to protect the correlative rights and entitlement to payments. The record clearly reflects that it was the breach of duty by the operator, and not Oryx, that delayed the payments to the underproduced parties. The underproduced parties must look to the operator for any detriment such as interest or other necessary expenses they incurred to secure their cash balancing rights.

In section 540, the legislature has specifically addressed when interest and attorney fees are recoverable for cash balancing. Accordingly, interest and attorney fees are recoverable *only* as provided in section 540.[3] General interest and attorney fee statutes are not applicable to suits involving cash balancing.

In conclusion, we hold that section 540 applies to cash balancing upon depletion of a well. We further hold that Oryx, an overproduced party, was entitled to judgment as a matter of law that its cash balancing payments upon depletion were in substantial compliance with section 540, in view of delayed final accounting by the operator, and was not subject to the interest and attorney fee assessments of the statute.

REVERSED AND REMANDED WITH DIRECTIONS TO ENTER JUDGMENT

FOR ORYX. All parties to bear their respective attorney fees.

BOUDREAU, P.J., and RAPP, J., concur.

---

**3.** In holding that the contract at issue is governed by section 540, and that cash balancing upon depletion must be accomplished within 60 days of depletion, or subject the overproduced party to attorney fees, interest and costs, we do *not* imply that parties cannot *expressly* vary the time period in which cash balancing must be accomplished.